# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOSE LUIS OCAMPO,        )
                                    )
        Plaintiff,      )
                                    )     Case No. 16-cv-9388
        v.                )
                                    )     Judge Robert M. Dow, Jr.
GC SERVICES LIMITED PARTNERSHIP, )
                                    )
        Defendant.    )
                                    )
                                    )

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's renewed motion for class certification [52]. For the reasons set forth below, the Court denies Plaintiff's renewed motion for class certification [52]. Plaintiff is given until January 7, 2019 to file any motion for substitution. This case is set for further status hearing on January 10, 2019 at 9:00 a.m.

## I.     Background

On or about August 18, 2016, after Plaintiff Jose Luis Ocampo could no longer afford to pay a debt owed to DISH Network due to his financial circumstance, Defendant GC Services Limited Partnership ("GCS" or "Defendant")[1] —a collection agency—mailed Plaintiff a collection letter regarding his debt. [19 (Am. Compl.), at ¶¶ 13-14, 17.] The collection letter, which was Defendant's initial communication with Plaintiff, provided information regarding Plaintiff's account with DISH Network, such as the account number, the original creditor (*i.e.* DISH Network), and a current balance due. [*Id*. at ¶¶ 18, 20.] The collection letter stated that

---

[1] When Plaintiff filed its motion for class certification, GC Services International was named as a Defendant in this matter. However, on April 12, 2018, the Court granted Plaintiff's oral motion to dismiss Defendant GC Services International LLC. [See 62.] All references to Defendant therefore are to GC Services Limited Partnership, the only remaining Defendant.

the debt had been placed in collection and the balance due was $523.70. [*Id.* at ¶¶ 21-22.] The letter also stated:

> The balance that has been placed in collections may include the cost of your leased DISH Network equipment.

[*Id.* at ¶ 22.] Plaintiff contends that because of this language, it was unclear whether the stated balance due included amounts owed for equipment charges. [*Id.* at ¶¶ 23-25.] The letter further stated:

> While we have not reported this account to any consumer reporting agency as of the date of this letter, our client has authorized us to report your account to the three major consumer reporting agencies unless we are able to resolve your account.

[*Id.* at ¶ 32.] Plaintiff alleges that Defendant never intended to report his account to the three major credit reporting agencies as it was Defendant's practice only to perform account reviews on consumers, using their credit reports, but not to actually report accounts on consumers. [*Id.* at ¶ 33.]

On September 30, 2016, Plaintiff filed this class action lawsuit against GCS and GC Services International, LLC, bringing one count under the Fair Debt Collection Practices Act. Specifically, Plaintiff claims that the August 18, 2016 collection letter violated § 1692g(a)(1) and § 1692e of the Fair Debt Collection Practices Act ("FDCPA"). Section 1692g of the FDCPA provides:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt[.]

15 U.S.C. § 1692g. Section § 1692e of the FDCPA provides:

False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e(5).   On October 3, 2016, days after Plaintiff filed his lawsuit, GCS reported

Plaintiff's account to the credit reporting agencies.   [65-1 (Grover Rule 30(b)(6) Dep. Tr.), at

106:3-7.].

Plaintiffs seek to certify a Rule 23(b)(3) class of:

(1) all persons with addresses in the State of Illinois (2) from whom Defendant attempted to collect a delinquent consumer debt, (3) upon which Defendants sent a form letter substantially similar to that of Plaintiff's Exhibit D, which contained the following paragraphs:

(a) While we have not reported this account to any consumer reporting agency as of the date of this letter, our client has authorized us to report your account to the three major consumer reporting agencies unless we are able to resolve your account; and

(b) Please read the following message provided by DISH Network: The balance that has been placed in collections may include the cost of your leased DISH Network equipment.   If you choose to return the equipment to DISH Network they will reverse the leased equipment fees and/or refund any payments made that were applied to equipment charges;

(4) From which the letter was sent between a time on or after September 30, 2015, and on or before October 14, 2017.

[52, at 1-2.]   Before the Court is Plaintiff's renewed motion for class certification [52].

## II.   Legal Standard

To be certified as a class action, a proposed class must satisfy the requirements of Federal

Rule of Civil Procedure 23(a) and one of the three alternative requirements in Rule 23(b).

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).    Rule 23(a) provides that a named party may sue on behalf of individuals who are similarly situated if: (1) the class is so numerous that joinder of all putative class members is impracticable ("numerosity"); (2) there are questions of law or fact common to the putative class ("commonality"); (3) the claims or defenses of the named party are typical of the claims or defenses of the putative class members ("typicality"); and (4) the named party will fairly and adequately protect the interests of the class ("adequacy").    Fed. R. Civ. P. 23(a).    "[A] proposed class must always meet the Rule 23(a) requirements[.]"    *Messner*, 669 F.3d at 811. "Because Rule 23(a) provides a gate-keeping function for all class actions, ordinarily [courts] begin there and only turn * * * to Rule 23(b) after [the court is] certain that all of Rule 23(a)'s requirements had been met."    *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

When certification is sought under Rule 23(b)(3), as it is here, the proponents of the class must also show that: (1) questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members ("predominance"); and (2) a class action is superior to other available methods of resolving the controversy ("superiority"). *Messner*, 669 F.3d at 811.    Moreover, the class must also meet Rule 23's "implicit requirement of 'ascertainability,'" meaning that the class is "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

Plaintiffs bear the burden of proving that they are entitled to class certification.    *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).    Although class certification proceedings are not "a dress rehearsal for the trial on the merits," *Messner*, 669 F.3d at 811, for purposes of deciding the certification question, the Court does not presume that all well-pleaded allegations are true.    See *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001).    Rather,

before it allows a case to proceed as a class action, the Court "should make whatever factual and legal inquiries are necessary under Rule 23." *Id*. at 676. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). But the showing need not be "to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner*, 669 F.3d at 811 (citation omitted). The Court exercises broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

## III.  Analysis

### A.  Acertainability

To show ascertainability, the class must be "defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659 (citation omitted). "There can be no class action if the proposed class is amorphous or imprecise." *Id*. (quoting *Young v. Nationwide Mutual Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)). A vague definition is problematic "because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Id*. at 660 (citation omitted). "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id*. "Rule 23 requires that a class be defined, and experience has led the courts to require that classes be defined clearly and based on objective criteria." *Id.* at 659.

Defendant argues that Plaintiff's proposed class definition is not sufficiently ascertainable because (1) individualized inquiries would be necessary to determine whether any class

member's debt was a "consumer debt" pursuant to the FDCPA,[2] and (2) the class definition is not limited to individuals who received *initial* letters containing the relevant paragraphs during the relevant time period, as § 1692g only applies to initial communications.[3]

With respect to the first argument, even though some inquiry will be necessary to determine whether a letter recipient's debt was a "consumer debt" for the purposes of the FDCPA, this does not mean that the class is not clearly defined by objective criteria. See *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001) ("[T]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under the FDCPA.") (citations omitted); *Gold v. Midland Credit Mgmt.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014) ("[A]s many other courts have determined in considering class certification under the FDCPA, the mere fact that the debt collection agency does not segregate business and consumer debt accounts is not enough to thwart class certification."); see also *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 169 (5th Cir. 2015) (holding that class was sufficiently ascertainable where there was "nothing to suggest that a lengthy individualized analysis of each account and all of its individual transactions would be necessary to identify class members").

Here, Plaintiff asserts that the parties can look to each potential class member's contract with DISH Network to determine whether their debt was a consumer debt. [45 (Pl.'s Reply

---

[2] Under § 1692e of the FDCPA, it is unlawful for a "debt collector" to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." A "debt"—as that term is defined in the FDCPA—is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5).

[3] Defendant also argues that Plaintiff's class definition is not ascertainable because it refers to "all persons similarly situated in the State of Illinois." [41 (Def.'s Resp. Br.), at 5.] Although Plaintiff includes this language in one discussion of his proposed class definition [52 (Pls. Mot.), at ¶ 20], the language is not included Plaintiff's initial proposed class definition. [*Id.* at 1-2]. Because the reference to "all persons similarly situated in the State of Illinois" is not necessary, this language will not be included in the class definition.

Br.), at 3.]   In support of this assertion, Plaintiff attaches his underlying contract with DISH Network.   [45-1.]   The contract is titled "Residential Consumer Agreement" and references the fact that it is an agreement for the "Digital Home Advantage plan."   [*Id*. at 2.]   Even if the underlying contracts cannot be obtained, or even if is not clear from the underlying contracts whether the potential class member's debt was a "consumer debt" for the purposes of the FDCPA, it would be possible to determine whether a possible class member's debt was a "consumer debt" simply by asking them the primary purpose of their account.   See, *e.g.*, *Butto v. Collecto Inc.*, 290 F.R.D. 372, 382 (E.D.N.Y.2013) ("The Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt."); *Kinder v. United Bancorp, Inc.*, 2012 WL 4490874, at *5 (E.D. Mich. Sept. 28, 2012) (finding that "this concern can easily be addressed when class members are identified by asking them to disclose the primary purpose of their account").

With respect to the second argument, the Court can alter Plaintiff's proposed class definition to limit the class to individuals who received their initial communication from GCS during the relevant time period, and the Court will exercise its discretion to do so here.   *In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation.").   Furthermore, Plaintiff's proposed class definition could benefit from some additional revisions for the purposes of clarity and to address challenges to Plaintiff's proposed class discussed in more detail below.   Accordingly, the Court alters Plaintiff's proposed class definition to the following:

> (1) all persons with addresses in the State of Illinois (2) who leased equipment from DISH Network (3) from whom Defendant GC Services Limited Partnership attempted to collect a delinquent consumer debt, (4) by sending an initial communication in the form of a letter containing the following paragraphs:

(a) While we have not reported this account to any consumer reporting agency as of the date of this letter, our client has authorized us to report your account to the three major consumer reporting agencies unless we are able to resolve your account; and

(b) Please read the following message provided by DISH Network: The balance that has been placed in collections may include the cost of your leased DISH Network equipment. If you choose to return the equipment to DISH Network they will reverse the leased equipment fees and/or refund any payments made that were applied to equipment charges;

(5) sent on or after September 30, 2015 and on or before October 14, 2017.

With this altered class definition, the Court addresses the remaining Rule 23 requirements.[4]

## B.     Numerosity under Rule 23(a)(1)

The first requirement under Rule 23(a) is that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000) (citations omitted). Further, "a plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). Courts "may rely on common sense to determine whether an estimate of class size is reasonable," but estimates "may not be based on pure speculation." *Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006) (citations omitted); see also *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (recognizing that "plaintiffs are not required to

---

[4] Should there be another motion for class certification filed in this case, the parties are free to make any arguments either for or against the Court's proposed class definition. The parties also are free to propose any changes of their own.

specify the exact number of persons in the class"); *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978) ("The difficulty in determining the exact number of class members does not preclude class certification.").

Here, Plaintiff submitted evidence indicating that Defendant sent approximately 4,320 letters containing both of the paragraphs Plaintiff challenges.[5]   [45-4, at 2.]   Defendant argues that Plaintiff nonetheless has failed to satisfy Rule 23's numerosity requirement because (1) Plaintiff does not offer any evidence regarding how many of the letters were initial communications, (2) Plaintiff does not offer any evidence regarding how many of the letters sought to collect consumer debts, and (3) people—not letters—make up a class.   There are almost certainly fewer than 4,320 class members, for the reasons identified by Defendant. However, due to the large number of letters sent during the relevant time period, common sense would dictate that there are at least hundreds, and more likely thousands, of class members. Accordingly, the Court finds that Plaintiff has satisfied Rule 23(a)'s numerosity requirement because the class is "so numerous that joinder of all members is impracticable."

### C.    Commonality under Rule 23(a)(2) and Predominance under Rule 23(b)(3)[6]

For a class to be certified, questions of law or fact must exist common to the class.   Fed. R. Civ. P. 23(a)(2).   Only one common question is necessary to satisfy Rule 23(a)'s commonality requirement.   See *Dukes*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (citation, internal quotation marks and alterations omitted)); *Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180, *4 (N.D. Ill. Oct. 1, 2007) ("Not all factual or legal questions raised in a lawsuit need be common so long as a single

---

[5]  Because Defendant GC Services International, LLC has been dismissed from the lawsuit, the Court's modified class definition is limited to persons to whom Defendant GC Services Limited Partnership sent a letter.

[6]  Defendant makes the same arguments with respect to commonality and predominance.   The Court therefore will address both of these requirements together.

issue is common to all class members." (quoting *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986))). However, superficial common questions—like whether each class member shares a characteristic or "'suffered a violation of the same provision of law'—are not enough." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350). Commonality thus requires a common issue capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In order to bring otherwise highly individualized claims as a class, the class must establish systemic violations or an illegal policy. *Jamie S.*, 668 F.3d at 497.

Although related to the commonality requirement, "the predominance criterion is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997) (citation omitted). It requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Plaintiffs satisfy predominance requirement only if they can show that "common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (citation and alterations omitted). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* (internal quotation marks omitted) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)); see also *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (common questions are where

"the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof" (alteration in original) (citation omitted)).

As the Supreme Court recently explained, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id*. (citation omitted). Here, Defendant argues that Plaintiff fails to satisfy the commonality and predominance requirement for several reasons.

First, Defendant argues that Plaintiff cannot satisfy Rule 23's commonality and predominance requirements because "the state of mind of the plaintiff and the materiality of the alleged representations are determinative issues." [41 (Def.'s Resp. Br.), at 8 (citations omitted).] In making this argument, Defendant relies on two district court cases—S*tockman v. Credit Prot. Ass'n, LP.*, 2017 WL 2798403, at *3 (N.D. Ill. June 28, 2017) and *Gonzalez v. Credit Prot. Ass'n, L.P.*, 2017 WL 2798404, at *3 (N.D. Ill. June 28, 2017). Those cases, in turn, cite *Hahn v. Triumph Partnerships LLC*, which held that materiality is a requirement for FDCPA claims brought pursuant to § 1692e. 557 F.3d 755, 757 (7th Cir. 2009). However, *Hahn* does not reference Plaintiff's subjective state of mind. Rather, *Hahn* applies the "unsophisticated consumer" analysis Plaintiff contends is applicable in this case, which is an objective standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F. 3d 1254, 1257 (7th Cir.

1994).   Because the FDCPA's materiality standard is objective, it does not preclude a finding

that Plaintiff satisfies Rule 23(a)(2)'s commonality requirement.

Second, Defendant argues that "[w]hether any particular class plaintiff was effectively

informed of the amount they owed depends on several facts, including whether they leased

equipment, what they leased, whether they returned any of the equipment leased, what was

returned, when it was returned, whether there was a payment made before, after or in the interim

in relation to the returned leased equipment and in relation to the timing of the receipt of the

letter."   [41 (Def.'s Resp. Br.), at 7.]   This argument misses the point of Plaintiff's claim.

Plaintiff does not simply contend that the letter incorrectly informed him of the balance owed.

Rather, Plaintiff contends that the letter did "not clearly inform Plaintiff whether or not the

balance included equipment charges."   [19 (Am. Compl.), at ¶ 23.]   The FDCPA provides that

a debt collector must (1) include the amount of debt owed in its initial communication with a

consumer, or (2) provide the amount of debt owed in a written notice within 5 days of the initial

communication, unless the consumer has paid the debt in full.   15 U.S.C. § 1692g(a).

Plaintiff's claim that Defendant violated § 1692g(a) of the FDCPA is based on the contention

that "GCS failed to effectively inform Plaintiff of the amount of the alleged debt in its initial

communication, in violation of 15 U.S.C. § 1692g(a)(1), when it stated that equipment charges

may be included in the account balance."   [19 (Am. Compl.), at ¶ 31.]   The Seventh Circuit

has held that § 1692g(a)(1) requires that debt collectors state the full amount owed, not just a

portion of the amount owed.   *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark,*

*L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (holding that it was a violation of § 1692g(a)(1) to

state the "unpaid principal balance" of the loan, noting that amount did "not include accrued but

unpaid interest, unpaid late charges, escrow advances or other charges").   The Seventh Circuit

has also held that it is implicit in the FDCPA "that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) (collecting cases).

Here, Plaintiff argues that the statement that equipment charges may be included in the account balance is so confusing on its face that an "unsophisticated consumer" would not be able to determine whether the amount stated in the letter was the full amount owed. Defendant does not explain how the challenged language would be more or less confusing to consumers depending on the individual circumstances of each consumer's contract, with one exception. Given that the challenged language arguably creates an ambiguity regarding whether and to what extent the amount owed includes amounts owed relating to leased DISH Network equipment,[7] it is not clear how an unsophisticated consumer that did not lease DISH Network equipment could be confused by the challenged language. In its supplemental brief, Plaintiff argues that persons who did not lease DISH Network equipment could be confused about the amount they owed because "[t]he language fails to specify the amount of the fees charged for leased equipment[.]" [70 (Pl.'s Supp. Resp. Br.), at 2.] But it is not clear to the Court how even an unsophisticated consumer who did not lease DISH Network equipment could be confused by the challenged language, as any such consumer presumably would know that they did not owe *any* debts relating to DISH Network equipment that they never leased. However, the one factual variance on which putative class members' claims may turn does not bar class certification. The Court can alter Plaintiff's proposed class definition to limit the class to individuals who leased DISH

---

[7] Defendant's supplemental brief cites numerous cases in support of its argument that the challenged language does not violate Section 1692g(a). [65 (Def.'s Supp. Br.), at 3-4.] However, that merits issue is not properly before the Court on Plaintiff's motion for class certification.

Network equipment, which the Court has done to the class definition above.[8]  *In re Motorola Sec. Litig.*, 644 F.3d at 518 ("[A] district court has the authority to modify a class definition at different stages in litigation.").

The Court recognizes Defendant's position that determining whether letter recipients leased DISH Network equipment would require a burdensome, account-by-account manual review.   [65 (Def.'s Supp. Br.), at 5.]   Although Defendant argues that individualized inquiries would be necessary to determine whether a letter recipient leased DISH Network equipment, letter recipients simply could be asked whether they leased DISH Network equipment.[9]  *Butto*, 290 F.R.D. at 382; *Kinder*, 2012 WL 4490874 at *5.   In fact, Plaintiff's deposition testimony demonstrates how easily this can be done.   [45-2 (Ocampo Dep. Tr.), at 54:19-24 ("Q: Did you lease equipment from Dish Network?   A: Yes.").]   Thus, the Court sees no reason why individual hearings would be necessary to determine whether a potential plaintiff falls within the scope of the Court's revised class definition.   *Cf. Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747 (7th Cir. 2008) ("The evaluation of the class members' claims will require individual hearings."); *Pastor v. State Farm Mut. Auto. Ins. Co.*, 2005 WL 2453900, at *3 (N.D. Ill. Sept. 30, 2005) ("[T]he class definition would require the court to conduct an inquiry into the merits of each class member's claim, as well as conduct individual inquiries to determine whether a

---

[8]  The Court is not holding that a person who did not lease DISH Network equipment could not establish a claim under Section 1692g based on the challenged language.   Still, the Court finds it much less likely that any such persons could be confused by the challenged language.   Instead of altering the proposed class definition, it also may be possible to certify a subclass of persons who did not lease DISH Network equipment.   See Fed. R. Civ. P. 23(c)(5).   The Court will entertain any such proposal in any future motion for class certification.

[9]  To the extent that Defendant contends that limiting the proposed class to individuals who leased DISH Network equipment will defeat numerosity, the Court finds that unlikely to be the case.   Defendant sent approximately 4,320 letters containing both of the paragraphs Plaintiff challenges.   The Court finds it highly unlikely that a large enough percentage of individuals receiving such letters owned their equipment such that the revised class definition above would not satisfy Rule 23's numerosity requirement.

putative class member's car was in fact usable, in order to determine class membership." (citations omitted)), aff'd 487 F.3d 1042 (7th Cir. 2007).

Third, in regard to the purported credit reporting threat, Defendant argues that the nature of Plaintiff's claim destroys commonality. Specifically, Defendant contends that Plaintiff's allegations that he "purchased his consumer report a month after the Letter" and that Defendant had "not reported any information to the consumer reporting agencies" are the "core" of his claim but are not common to the class. But these facts are not the "core" of Plaintiff's FDCPA claim. Plaintiff claims that Defendant threatened to report his account to the three credit reporting agencies even though it was Defendant's practice only to perform reviews on consumers using their credit reports, but not to actually report accounts on consumers. [19 (Am. Compl.), at ¶¶ 32-37.] The class is limited to individuals who received letters containing the same purported threat that Plaintiff received. Furthermore, according to its corporate representative, it was Defendant's policy—pursuant to its contract with DISH Network—to report all qualifying accounts to the credit bureaus.[10] [65-1 (Grover Rule 30(b)(6) Dep. Tr.), at 21:25-22:8, 22:22-23:14.] Defendant argues that Plaintiff cannot demonstrate that all class members suffered from the same injury because "some accounts will have been reported to the credit bureaus and some will not have been reported, depending on whether the specific account meets the qualifying requirements" for reporting under Defendant's policy. [65 (Def.'s Supp. Br.), at 6.] But Defendant's corporate representative testified that "for everyone that would have received one of these letters, the same type of letter that [Plaintiff] received, it was

---

[10] The corporate representative for GC Services testified at his Rule 30(b)(6) deposition that GC Services' contract with Dish Network requires that GC Services report all accounts that qualify to the credit bureaus. [65-1 (Grover 30(b)(6) Dep. Tr.), at 22:3-14.] An account qualifies for reporting when the account has been with GC Services for at least 45 days, it is not in a payment arrangement, it is not in a hold status, and the account has not been resolved prior to the 45-day period. [*Id.*] This testimony seems to undermine Plaintiff's merits claim. Given this policy, it is not clear to the Court why Defendant would oppose class certification on this issue, as Defendant appears likely to succeed on the merits of that claim.

[Defendant's] intention to credit-report all of those accounts on day 45 unless" the person subsequently took an action that negated the need to report them, such as paying the debt. [65-1 (Grover Rule 30(b)(6) Dep. Tr.), at 106:16-23.] Even though some of the letter recipients might not ultimately have been reported, the evidence before the Court indicates that it was Defendant's policy only to send the challenged letters to those persons it intended to report absent subsequent action by the recipient. Thus, whether the language Plaintiff challenges constitutes a threat to take an action and whether it is Defendant's practice to not actually report consumers are issues that can be resolved on a class-wide basis. These determinations predominate over any individual determinations. Thus, Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.

### D. Typicality under Rule 23(a)(3)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Claims of the class representatives and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele*, 149 F.3d at 595. "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) (citation omitted). Typicality is meant to ensure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (internal quotation marks omitted) (citation omitted).

Plaintiff's FDCPA claim is based on the contention that the two challenged paragraphs—which were in the letters sent to every class member—violate the FDCPA. Defendant has not identified any material facts indicating that Plaintiffs claims do not have the

same essential characteristics of the claims of the class at large. Nor has Defendant identified any particular defenses that Plaintiff will have to address that will not also have to be addressed by the class at large. Thus, Plaintiff has satisfied Rule 23(a)'s typicality requirement.

### E. Adequacy of Representation under Rule 23(a)(4)

Before a class will be certified, Rule 23(a)(4) requires that named plaintiffs show that "the representative parties will fairly and adequately protect the interests of the class." For the adequacy requirement to be satisfied, the claims and interests of the named plaintiffs must not conflict with those of the class, the class representatives must have sufficient interest in the outcome of the case, and class counsel must be experienced and competent. *Retired Chicago Police Ass'n*, 7 F.3d at 598. Defendant argues that Plaintiff fails to satisfy Rule 23(a)(4)'s adequacy requirement because Plaintiff has not provided sufficient evidence to establish (1) that class counsel is sufficiently experienced and competent, or (2) that the named Plaintiff has a sufficient interest in the outcome of the case to serve as a class representative.

With respect the first argument, in assessing the adequacy of class counsel, the Court considers "counsel's work on the case to date, counsel's class action experience, counsel's knowledge of the applicable law, and the resources counsel will commit to the case." *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n. 7 (7th Cir. 2013) (citing Fed. R. Civ. P. 23(g)(1)(A)). Taking these factors into account, the Court is satisfied that counsel is sufficiently experienced and competent to serve as class counsel in this relatively straightforward class action.

The affidavit submitted by Michael J. Wood indicates that Mr. Wood has been counsel to approximately 500 FDCPA cases and that his firm has brought nearly 400 FDCPA cases. Mr. Wood lists a number of exemplary FDCPA cases that he and his firm have worked on in this

district, and Mr. Wood and others at his firm—including lead counsel Celetha Chatman—obtained favorable results for the plaintiffs in those cases. [See, *e.g.*, *Gomez v. Portfolio Recovery Associates, LLC*, No. 15-cv-4499 (N.D. Ill.), Dkt. 63 (granting summary judgment in favor of plaintiff in FDCPA case).] Although Mr. Wood is not acting as lead counsel,[11] he represents that he will be working on this case and will act as trial counsel if the case goes to trial. Furthermore, lead counsel Celetha Chatman has appeared before this Court on numerous FDCPA cases. Although class counsel are relatively new attorneys, they have substantial experience working on FDCPA cases and therefore sufficiently are knowledgeable of the applicable law.

Mr. Wood also has experience on other class action cases. Mr. Wood has worked on class actions that were resolved before a class was certified. [See, *e.g.*, *Ocampo v. United Collection Bureau, Inc.*, No. 16-cv-09401, Dkt. 89, Dkt. 90 (N.D. Ill.).][12] He also was appointed class counsel in two FDCPA class action settlements. [*Wingate v. Resurgence Capital, LLC, et al.*, No. 14-cv-7753 (N.D. Ill.), Dkt. 44; *Szczesniak v. National Account Services, Inc.*, No. 14-cv-10346 (N.D. Ill.), Dkt. 48.] Defendant argues that because these were 2014 cases, Mr. Wood's role on these cases must have been minimal. [41 (Def.'s Resp. Br.), at 11.] However, Mr. Wood acted as lead counsel in *Wingate*. And although *Szczesniak* was

---

[11] As a matter of best practices, Plaintiff should have also submitted an affidavit outlining lead counsel's experience and qualifications. Regardless, the failure to comply with best practices is not a basis for finding class counsel is inadequate to represent the class.

[12] Plaintiff's counsel represents that following Community Law Group cases "have been brought as class actions and have not yet been certified: *Acosta v. Chase Receivables*, 14-cv-8198 (N.D. Ill.); *Davis v. Asset Acceptance*, 14-cv-8741 (N.D. Ill.); *Aguirre v. Absolute Resolutions Corp.*, 15-cv-11111(N.D. Ill.); *Ocampo v. United Collection Bureau, Inc.*, 16-cv-09401 (N.D. Ill.)." [39-1, at 4.] Defendant flagged that *Acosta v. Chase Receivables* and *Davis v. Asset Acceptance, LLC*, both had been dismissed pursuant to Rule 41 at the time Mr. Wood executed his declaration. [*Acosta*, No. 14-cv-8741, Dkt. 56, Dkt. 57 (N.D. Ill.); *Davis*, No. 14-cv-7841, Dkt. 41, Dkt. 42 (N.D. Ill.).] The Court has no reason to believe that counsel intentionally misrepresented the status of these cases—especially in light of the fact that both Defendant and the Court easily could verify the accuracy of this information.

filed in 2014, the final settlement approval order was issued in 2016 when Mr. Wood had more experience. While counsel's class action experience is limited, counsel has sufficient FDCPA experience and class action experience to adequately represent the class in this straightforward FDCPA action.[13]

However, Rule 23(a)(4) also requires that a class representative be "sufficiently interested in the outcome to ensure vigorous advocacy[.]" *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 394 (N.D. Ill. 2006) (citation omitted). The burden of establishing that the class representative meets this standard is "not difficult." *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) (citing *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005)). "An adequate class representative must maintain only an 'understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'" *Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180, at *6 (N.D. Ill., Oct. 1, 2007) (quoting *Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007)). A class representative does not need to "have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained." *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 350 (N.D. Ill. 2008) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966)). Furthermore, "[e]xperience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary [are]

---

[13] Defendant also argues that it is "concerning that [Ms.] Chatman has made a statement to the Court which was contradicted by Plaintiff at his deposition." [41 (Def.'s Resp. Br.), at 11.] Specifically, Defendant references the fact that Plaintiff testified that his phone had not been shut down in September or August of 2017, but Ms. Chatman made a representation to the Court in August 2017 that Plaintiff did not show up to his scheduled deposition because his "phone was recently turned off." However, it is unclear from the materials identified by the parties whether Plaintiff's deposition originally was scheduled before August of 2017. Regardless, Plaintiff's deposition testimony indicates that he was unsure about whether his phone had been turned off and, if so, when. [45-2 (Ocampo Dep. Tr.), 25:10-21.] Given his uncertainty, the Court is unwilling to infer that Plaintiff or counsel engaged in any misconduct.

sheer sophistry." *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (quoting

*Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 n. 9 (3d Cir. 1973)). Still, "[a] named

plaintiff must have some commitment to the case, so that the 'representative' in a class action is

not a fictive concept." *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991). Based on

Plaintiff's deposition testimony, the Court is not satisfied of Plaintiff's ability and willingness to

vigorously prosecute the action.

To begin, Plaintiff lacks a fundamental understanding of the class action process and his

responsibilities as a class representative. In fact, Plaintiff did not appear to know even what a

class action is. [45-2 (Ocampo Dep. Tr.), at 17:24-18:10 ("Q: * * * Do you know what a class

action is? A: Yeah. Q: What is it? A: I'm not sure exactly, like everything and so * * *. Q: * * *

Can you give me any description at all? A: It's to fix a problem. Q: Anything else? A:

Sorry.").][14] He also did not know what a class representative is or the duties a class

representative owes to the class. [*Id*. at 42:1-15 ("Q: Do you know what the phrase 'class

representative' means? * * * A: No. Q: Can you tell me what you believe your responsibilities

are as a representative of a class? * * * A: No.").] He could not say why he filed this lawsuit.

[*Id*. at 18:11-19 ("Q: Why did you file this lawsuit? * * * A: I'm not sure").] When asked what

he is seeking on behalf of the class, Plaintiff stated "[t]rying to fix the case." [*Id*. at 38:2-10.]

But Plaintiff could not say what that meant. [*Id*. at 38:11-13 ("Q: Okay. And tell me what you

mean by "fix the case." Do you know? A: No, I don't. Sorry.").] Thus, unlike *Gammon v. GC*

---

[14] Counsel objected to many of the relevant questions asked at Plaintiff's deposition on the grounds of
attorney-client privilege. However, in its class certification briefing, Defendant has not asserted that the relevant
portions of the deposition contain privileged statements. Regardless, as discussed above, it is Plaintiff's obligation
to establish that he is an adequate class representative. Plaintiff may not simultaneously claim that he is an
adequate class representative (by asserting that he understands his obligations as a class representative, for example)
yet bar Defendant from eliciting testimony on that issue on the grounds of attorney-client privilege. *Willy v.
Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("The case law amply demonstrates the narrower proposition
that the attorney-client privilege only prohibits a party from simultaneously using confidential information as both a
shield and a sword." (collecting cases)).

*Services Limited Partnership*—a case relied extensively upon by Plaintiff—Plaintiff here has not demonstrated that "he understands the nature of a class action and his duties as class representative[.]"   162 F.R.D. at 318.[15]

Plaintiff also did not understand the legal basis of his claim.   [45-2 (Ocampo Dep. Tr.), at 26:21-22 ("Q: Do you know what the FDCPA is? A: No.").]   While that alone might not be enough to disqualify Plaintiff as a class representative, Plaintiff also lacked an understanding of basic facts in the case.   *Cf. Francisco v. Doctors & Merchants Credit Serv., Inc.*, 1998 WL 474107, at *3 (N.D. Ill. Aug. 3, 1998) (finding named plaintiff adequate where he had "a competent lay understanding of this case" and understood "his obligations as a class representative").   For example, although Plaintiff testified that the letter he received from Defendant was improper because it did not show exactly how much Plaintiff owed, Plaintiff could not explain what that meant.   [45-2 (Ocampo Dep. Tr.), at 59:17-60:4 ("Q: You don't know what you're arguing you should owe, other than $523.70, correct? * * * A: Doesn't—it doesn't show exactly how much I owe. Q: Why do you say that? I don't understand. If you know. A: No, I don't.").]   Based on the foregoing testimony demonstrating Plaintiff's lack of interest and/or ability in proceeding as a class representative, the Court cannot say with any confidence that Plaintiff adequately will represent the class.

Furthermore, Plaintiff testified that he is unwilling to bear financial burdens to proceed as a class representative.   [45-2 (Ocampo Dep. Tr.), at 21:1-11 ("Q: Are you willing to bear the

---

[15] Plaintiff also asserts that "[i]t was found not to be enough to defeat class certification in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 266 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, or even the nature of the misconduct of the defendants."   [45 (Pl.'s Reply Br.), at 9 (quoting *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 318 (N.D. Ill. 1995)).] This language was taken from *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, which characterized *Surowitz* as "an extreme case." 657 F.2d 890, 896 (7th Cir. 1981).   However, *Surowitz* did not address whether the plaintiff was adequate for the purposes of class certification under Rule 23. Regardless, the Court cannot ignore the Seventh Circuit's directive that "[a] named plaintiff must have some commitment to the case, so that the 'representative' in a class action is not a fictive concept." *Rand*, 926 F.2d at 599.

financial burdens to proceed as the class representative in this lawsuit? * * * A: No. Q: Have you paid any costs in relation to this lawsuit yet? A: No.").] But a class representative must have commitment to his case, including exposure to costs under Rule 54(d). *Johnson v. Allstate Ins. Co.*, 2012 WL 4936598, at *10 (S.D. Ill. Oct. 16, 2012) (citing *White v. Sundstrand Corp.*, 256 F.3d 580, 586 (7th Cir. 2001)). Although the Court requested supplemental briefing on the issue, Plaintiff has not addressed whether Plaintiff is willing to bear at least some costs under Rule 54(d).[16] Nor does Plaintiff explain whether there is some fee arrangement with counsel that would cover any such fees. Instead, Plaintiff merely asserts that he already has incurred some costs "including attorney retention, transportation, and communication costs, among others." [70 (Pl.'s Supp. Resp. Br.), at 4.] However, Plaintiff does not submit any evidence supporting that assertion, which contradicts Plaintiff's deposition testimony. Although the Court is not denying class certification on that basis, this is yet another reason why Plaintiff has failed to establish that he is an adequate class representative.

### F. Superiority

To certify a Rule 23(b)(3) class, Plaintiff must demonstrate predominance and superiority. The Court already has determined that Plaintiff has established that common questions predominate over questions affecting only individual class members. The Court now turns to the second prong of Rule 23(b)(3), which is satisfied when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "A class action is superior where potential damages may be too insignificant to provide class members with

---

[16] Plaintiff's supplemental brief asserts that the Court did not request supplemental briefing on this issue, but the Court specifically asked the parties to address whether it is necessary for Plaintiff to "be willing to bear some costs (such as costs under Rule 54(d)) to serve as a class representative[.]" [See 62, at 2.] The Court also directed the parties' attention to specific cases, which Plaintiff does not address. [*Id.* at 2 (citing *Johnson v. Allstate Ins. Co.*, 2012 WL 4936598 (S.D. Ill. Oct. 16, 2012); *White v. Sundstrand Corp.*, 256 F.3d 580, 586 (7th Cir. 2001); *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991)).]

incentive to pursue a claim individually." *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 353 (N.D. Ill. 2008) (quoting *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005)). "FDCPA class actions are usually superior for reasons of judicial economy." *Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 387 (N.D. Ill. 2012). Because common questions significantly predominate over individualized issues, it is the best use of judicial resources to utilize class adjudication. Accordingly, a class action is the superior method of adjudicating the claims of Plaintiff and the putative class. Because Plaintiff has not satisfied the adequacy requirement, however, the Court will not certify a class at this time.

### G. Overbreadth

In its initial supplemental brief, Defendant argued for the first time that Plaintiff's proposed class definition is overbroad because it "includes individuals 'who have not read, seen, or even received the collection letters—whether because they were lost in the mail or otherwise—and therefore could neither have been threatened with action that cannot legally be taken nor misled under the applicable provisions of the FDCPA.'" [65 (Def.'s Supp. Br.), at 3 (quoting *Erickson v. Elliot Bay Adjustment Co., Inc.*, 2017 WL 1179435, at *11 (W.D. Wash. Mar. 29, 2017)).] This argument was raised improperly in the supplemental brief, as it did not address the issues on which the Court requested supplemental briefing. Regardless, because the Court is denying class certification based on Plaintiff's failure to satisfy Rule 23(a)'s adequacy requirement, the Court need not determine at this time whether Plaintiff's class should be limited to those who received letters with the challenged language. Should Plaintiff again move for class certification, however, Plaintiff should consider whether such a limitation is appropriate. See *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (affirming class certification of class limited to Colorado residents who had received the challenged collection letters during the

relevant time period); see also *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001) (certifying class of individuals "[w]ho were mailed a form collection letter" from the defendant that "were not returned by the Postal Service").

### H. Substitution

Among other issues addressed above, the Court requested supplemental briefing on whether it would be possible to "find another plaintiff to act as a class representative" if Plaintiff failed to satisfy Rule 23(a)'s adequacy requirement. [62, at 2.] In its supplemental brief, Plaintiff asserts that there are "[p]otentially thousands of citizens harmed by Defendant['s] deceptive letters regarding [sic] and if there arises any conflict, this court should allow a new class representative to be named." [70 (Pl.'s Supp. Resp. Br.), at 7 (citing *Swift v. First USA Bank*, 1999 WL 1212561, at 6 (N.D. Ill. Dec. 15, 1999)).] However, Plaintiff does not address relevant arguments raised by Defendant regarding the legal standard for allowing substitution of named Plaintiff in this case. [See, *e.g.*, 65 (Def.'s Supp. Br.), at 9-11 (discussing "good cause" requirement for amending complaint to substitute a named plaintiff).] Because the Court did not specifically request supplemental briefing on whether it *legally* is possible to substitute in a named plaintiff in this case, the Court will defer consideration of whether substitution of named plaintiff is appropriate. Plaintiff is given until January 7, 2019 to file any motion for substitution, if counsel deems such a motion to be appropriate.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's renewed motion for class certification [52]. Plaintiff is given until January 7, 2019 to file any motion for substitution. This case is set for further status hearing on January 10, 2019 at 9:00 a.m.

Dated:  November 28, 2018

Robert M. Dow, Jr.
United States District Judge